FILED
CLERK, U.S. DISTRICT COURT
9/25/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: DD DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

| UNITED STATES OF AMERICA, | SA CR 20-138-AB |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [50 U.S.C. § 1705(a) and (c): Conspiracy to Violate the International Emergency Economic Powers Act; 50 U.S.C. § 1705(a) and (c): Violation of the International Emergency Economic Powers Act; 18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 554: Smuggling Goods Out of the United States; 18 U.S.C. § 1956(a)(2)(A): Money Laundering; 18 U.S.C. § 2(a), (b): Aiding and Abetting and Causing an Act to be Done] |
| EBRAHIM AZADEGAN, and ALIREZA ALVANDI,    "AliReza Al,"    "Su Li," | |
| Defendants. | |

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

1. Defendant EBRAHIM AZADEGAN ("AZADEGAN") was located in Iran and facilitated the purchase, payment, and shipment of electronic equipment, including computer servers, to Iran. Defendant AZADEGAN was an Information Technology Manager for an Iranian electronics company named Zaeim Electronic Industries ("Zaeim").

2.      Defendant ALIREZA ALVANDI, also known as ("aka") "AliReza Al" aka "Su Li" ("ALVANDI"), was located in Iran and Hong Kong and owned and operated a front company purportedly located in Hong Kong called Yuzhui Electronics Inc. ("Yuzhui").  Defendant ALVANDI facilitated payment to coconspirator Johnny Paul Tourino ("coconspirator Tourino") from defendant AZADEGAN for the purchase and shipment of computer equipment to Iran.

3.      Coconspirator Tourino, a natural-born United States citizen, resided in Orange County in the Central District of California, where he was the Vice-President, owner, and operator of conconspirator Spectra Equipment, Inc. ("coconspirator Spectra"), a California company, which was also located in and doing business in Orange County, in the Central District of California.

4.      U.S. Company #1 was a company located in the state of New York that sold computer equipment.

5.      The computer servers referred to in this Indictment were computers designed to process requests and deliver data to other computers over a local network or the internet.  The computer servers were dual-use commercial goods, which were items that had both a commercial application and a military or strategic use, controlled by the Commerce Control List ("CCL") under Export Control Classification Number ("ECCN") 5A002.A for anti-terrorism and national security reasons.

6.      On February 5, 2012, the President issued Executive Order ("E.O.") 13599 in order to take additional steps with respect to the national emergency declared in E.O. 12957 of March 15, 1995, in light of the deceptive practices of the Central Bank of Iran and other Iranian banks to conceal transactions of sanctioned parties, the

deficiencies in Iran's anti-money laundering regime and the weaknesses in its implementation, and the continuing and unacceptable risk posed to the international financial system by Iran's activities.  E.O. 13599 imposed a broad set of prohibitions on certain dealings in the property or interests in property of Iranian financial institutions, including the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any Iranian financial institution.

7.   Bank Mellat and Bank Keshavarzi were Iranian financial institutions.

8.   Data Processing Iran Company ("DPI") was a computer, technology, and information technology consulting corporation headquartered in Tehran, Iran.

9.   The Grand Jury incorporates by reference and re-alleges these Introductory Allegations into each and every count of this Indictment as though fully alleged therein.

COUNT ONE

[50 U.S.C. § 1705(a), (c);

31 C.F.R. §§ 560.203, 560.204, and 560.205]

A.  OBJECTS OF THE CONSPIRACY

Beginning at least as early as in or around January 2013, and continuing up to and including at least in or around July 2017, in Orange County, within the Central District of California, and elsewhere, defendants EBRAHIM AZADEGAN ("AZADEGAN") and ALIREZA ALVANDI, also known as ("aka") "AliReza Al" aka "Su Li" ("ALVANDI"), and others known and unknown to the Grand Jury conspired and agreed with each other to knowingly and intentionally commit offenses against the United States, namely:

1.  To knowingly and willfully enter into transactions within the United States that evaded and avoided, and had the purpose of evading and avoiding, the regulations governing trade and exports from the United States to Iran, and by a United States person wherever located to Iran, in violation of 50 U.S.C. § 1705(a) and (c), and 31 C.F.R. § 560.203;

2.  To export, sell, and supply, and to attempt to export, sell, and supply, computer equipment from the United States to Iran, and by a United States person wherever located to Iran, in violation of the regulations that govern trade and exports to Iran, without first having applied for, and through such application obtained from the United States Department of Treasury's Office of Foreign Assets Control ("OFAC"), a license or authorization for such export, in violation 50 U.S.C. § 1705(a) and (c), and 31 C.F.R. § 560.204;

3.  To engage in a transaction and dealing in and related to goods, technology, and services for exportation, reexportation, sale

4

and supply, by a United States person wherever located, to Iran, without first having applied for, and through such application obtained from OFAC, a license or authorization for such export, in violation of 50 U.S.C. § 1705(a) and (c), and 31 C.F.R. § 560.206;

4. To approve, finance, and facilitate, and to attempt to approve, finance, and facilitate a transaction by a foreign person and a United States person, in violation of the regulations that govern trade and exports to Iran, without first having applied for, and through such application obtained from OFAC, a license or authorization for such export, in violation 50 U.S.C. § 1705(a) and (c), and 31 C.F.R. § 560.208; and

5. To contribute and provide goods and services to and for the benefit of an Iranian financial institution, in violation of the regulations that govern trade and exports to Iran, without first having applied for, and through such application obtained from OFAC, a license or other authorization for such activity, in violation 50 U.S.C. § 1705(a) and (c), and 31 C.F.R. § 560.211(b) and (d).

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1. Defendant AZADEGAN, while located in Iran, would communicate with Johnny Paul Tourino ("coconspirator Tourino") regarding the type and number of computer equipment needed by defendant AZADEGAN for export to Iran.

2. Defendant AZADEGAN would cause funds to be transferred from defendant ALVANDI outside the United States to coconspirator Tourino

in Orange County within the Central District of California to purchase the computer equipment.

3. Defendant ALVANDI and coconspirator Tourino would make material false and fraudulent pretenses, representations, and promises to, and conceal material facts from, U.S. Company #1 regarding the true end users and the country of destination of the computer equipment.

4. Through Yuzhui, defendant ALVANDI would purchase the computer equipment from and would wire payments to coconspirator Tourino and coconspirator Spectra.

5. Coconspirator Tourino would use coconspirator Spectra to wire payment to U.S. Company #1 for the computer equipment to be bought for defendant AZADEGAN.

6. Coconspirator Tourino arranged for the computer equipment to be shipped from New York to the United Arab Emirates, where the computer equipment was ultimately intended to be transshipped to Iran to be used by Iranian financial institutions Bank Mellat and Bank Keshavarzi.

7. Defendants AZADEGAN and ALVANDI and coconspirator Tourino concealed the end-users of the computer equipment, the source of the funds for payment for the computer equipment, and that Iranian individuals and entities were involved in the purchases.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants AZADEGAN and ALVANDI, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, on or about the dates identified below, including the following:

Overt Act No. 1: In an email dated July 4, 2015, defendant AZADEGAN stated that he was having difficulty getting software for the computer servers because of the sanctions against Iran.

Overt Act No. 2: In an email dated August 31, 2015, defendant AZADEGAN thanked coconspirator Tourino for procuring and shipping the computer servers, and stated that he wanted to work with coconspirator Tourino and coconspirator Spectra when Bank Mellat made another tender offer for five additional computer servers. In that email, defendant AZADEGAN indicated that Bank Mellat was the customer in the deal completed with U.S. Company #1's Australian subsidiary between June and August 2015.

Overt Act No. 3: In an email dated September 8, 2015, coconspirator Tourino told defendant AZADEGAN that he would be interested in an exclusive agreement between coconspirator Tourino and defendant AZADEGAN, that defendant ALVANDI had resolved the biggest obstacle of financing, and that coconspirator Tourino advocated giving U.S. Company #1 "limited information" as it would be more accommodating if it did not hear about the deal through multiple sources.

Overt Act No. 4: In an email dated September 12, 2015, defendant AZADEGAN told coconspirator Tourino that Bank Mellat in Iran had officially announced a tender offer for five computer servers.

Overt Act No. 5: In an email dated September 21, 2015, defendant AZADEGAN told coconspirator Tourino that he would buy the computer servers from coconspirator Tourino because "we had a successful deal." Defendant AZADEGAN also stated that coconspirator

7

Tourino knew of defendant AZADEGAN's "capabilities and stability in Iran's market."

Overt Act No. 6: In an email dated September 23, 2015, coconspirator Tourino told defendant AZADEGAN that U.S. Company #1 was interested in the deal and that it could allocate the computer servers if he and his customer were "willing." Coconspirator Tourino also asked defendant AZADEGAN if defendant AZADEGAN "will again be using" defendant ALVANDI to "accomplish" this deal.

Overt Act No. 7: In an email dated September 23, 2015, defendant AZADEGAN replied to coconspirator Tourino that defendant ALVANDI would be his "agent" in the deal, and that defendant ALVANDI would be "in direct contact . . . for the details."

Overt Act No. 8: In an email dated January 14, 2016 that included references to "Tehran" and "Iran," defendant AZADEGAN told coconspirator Tourino that coconspirator Tourino's competitor had won the deal. Coconspirator Tourino forwarded this email to U.S. Company #1 on January 15, 2016, but removed the references to "Tehran" and "Iran."

Overt Act No. 9: In an email dated February 24, 2016, defendant AZADEGAN told coconspirator Tourino that Bank Mellat had not made its decision regarding whom to purchase the computer servers from and that coconspirator Tourino still had an opportunity to obtain the deal. Defendant AZADEGAN also stated that if coconspirator Tourino did not accept payment from Iran, defendant ALVANDI could make the payment.

Overt Act No. 10: In an email dated March 2, 2016, defendant AZADEGAN told coconspirator Tourino that he was still waiting for a

purchase order from Bank Mellat and that the "Iranian new year" was approaching.

Overt Act No. 11: In an email dated September 16, 2016, defendant AZADEGAN told coconspirator Tourino that DPI could purchase a computer server for Bank Keshavarzi from coconspirator Tourino and coconspirator Spectra.

Overt Act No. 12: In an email dated November 11, 2016, coconspirator Tourino asked defendant AZADEGAN whether defendant ALVANDI was his "preferred intermediary" with respect to the computer server deal. In a reply, defendant AZADEGAN confirmed that defendant ALVANDI would be in contact "[a]s for the previous deal."

Overt Act No. 13: In an email dated December 16, 2016, coconspirator Tourino expressed frustration to defendant AZADEGAN regarding the delay of the deal, noting "they" do not always purchase the equipment they identify in their tender offers. Defendant AZADEGAN responded, "[y]ou are right, this is the true story about Iran's market."

Overt Act No. 14: In an email dated January 4, 2017, coconspirator Tourino provided defendant AZADEGAN with a status update regarding the transaction involving the purchase of computer servers for DPI and Bank Mellat.

Overt Act No. 15: On January 20, 2017, in response to an email from coconspirator Tourino regarding the delay, defendant AZADEGAN replied "[i]n Iran, Thursdays and Fridays are weekends. It is not bad for you to know more about your partners [sic] culture."

Overt Act No. 16: In an email dated January 25, 2017, coconspirator Tourino told defendant AZADEGAN that the "opportunity [was] perfect" for DPI to purchase a computer server.

9

  Overt Act No. 17: In an email dated February 1, 2017, coconspirator Tourino asked defendant ALVANDI for an update regarding the transaction with DPI for the computer server for Bank Keshavarzi.

  Overt Act No. 18: On February 5, 2017, coconspirator Tourino sent U.S. Company #1 a purchase order for four computer servers for a total value of $2,125,000.

  Overt Act No. 19: In an email dated February 6, 2017, coconspirator Tourino falsely told U.S. Company #1 that the end user of the computer servers was a bank in Africa and that the computer servers were "NOT going to Iran."

  Overt Act No. 20: From February 7, 2017 through February 13, 2017, defendant ALVANDI sent three wire transfers to coconspirator Tourino and coconspirator Spectra totaling over $1,125,000 through two front companies located in the United Arab Emirates as partial payment for the purchase of the computer servers.

  Overt Act No. 21: In an email dated February 19, 2017, defendant ALVANDI told coconspirator Tourino he expected coconspirator Tourino to be able to handle the problem of the "formal requirement for an export license" himself. Defendant ALVANDI told coconspirator Tourino that he could claim that the computer servers were going to a "friend's" company in Slovenia and that the price provided an opportunity "for investment."

  Overt Act No. 22: In an email dated February 20, 2017, defendant TOURINO forwarded the February 19, 2017, email to his attorney replacing the word "friend's" with "customers."

  Overt Act No. 23: In an email dated February 20, 2017, defendant TOURINO, through his attorney based in Los Angeles County

within the Central District of California, told U.S. Company #1 that the end user for the computer servers was in Slovenia.

<u>Overt Act No. 24</u>:  On February 28, 2017, coconspirator Tourino to obtained three checks from HomeStreet Bank in Orange County payable to U.S. Company #1 in the amount of $375,000 each, and mailed them to U.S. Company #1 for the purchase of the computer servers.

<u>Overt Act No. 25</u>:  On March 1 and March 6, 2017, defendant ALVANDI attempted to send coconspirator Tourino and coconspirator Spectra two wire transfers through two front companies in the United Arab Emirates totaling approximately $1,000,000 as final payment for the computer servers.

<u>Overt Act No. 26</u>:  On March 4, 2017, coconspirator Tourino requested a license from OFAC to unblock defendant ALVANDI's wire transfers falsely stating "Spectra has NO knowledge of, or has ever consented to anyone associated with Iran having any interest in this transaction/wire transfer."

<u>Overt Act No. 27</u>:  In March or April 2017, coconspirator Tourino deleted from his email account email correspondence with defendant AZADEGAN.

COUNT TWO

[50 U.S.C. § 1705(a), (c);

31 C.F.R. §§ 560.203, 560.204, and 560.205;

18 U.S.C. § 2(a), (b)]

On or about February 28, 2017, in Orange County, within the Central District of California, and elsewhere, defendants EBRAHIM AZADEGAN ("AZADEGAN") and ALIREZA ALVANDI, also known as ("aka") "AliReza Al" aka "Su Li" ("ALVANDI"), aiding and abetting each other, knowingly and willfully attempted to violate, and caused to be violated, the United States trade regulations regarding Iran by attempting to export, sell, and supply, from the United States to Iran, via United Arab Emirates ("UAE"), computer servers, without first having applied for and obtained by such application the necessary license and authorization from the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), for such export, sale, and supply.

Specifically, defendants AZADEGAN and ALVANDI, both Iranian persons, negotiated the sale of computer servers, provided payment for the computer servers, and caused the computer servers to be sent to the UAE knowing they were to be transshipped to Iran, without obtaining a license from OFAC.

## COUNT THREE

[50 U.S.C. § 1705(a), (c);

31 C.F.R. §§ 560.203 and 560.211(b) and (d);

18 U.S.C. § 2(a), (b)]

On or about February 28, 2017, in Orange County, within the Central District of California, and elsewhere, defendants EBRAHIM AZADEGAN ("AZADEGAN") and ALIREZA ALVANDI, also known as ("aka") "AliReza Al" aka "Su Li" ("ALVANDI"), aiding and abetting each other, knowingly and willfully attempted to violate, and caused to be violated, the United States trade regulations regarding Iran by attempting to engage in, and engaging in, the provision of goods and services to and for the benefit of an Iranian financial institution, without first having applied for and obtained by such application the necessary license and authorization from the United States Department of Treasury's Office of Foreign Assets Control ("OFAC").

Specifically, defendants AZADEGAN and ALVANDI, both Iranian persons, negotiated the sale of computer servers, provided payment for the computer servers to coconspirators Johnny Paul Tourino and Spectra Equipment, Inc., and attempted to cause the computer servers to be sent to the United Arab Emirates knowing they were to be transshipped to Iran, for the benefit of Banks Mellat and Keshavarzi, without obtaining a license from OFAC.

## COUNT FOUR

[18 U.S.C. §§ 1349, 1343]

A. OBJECTS OF THE CONSPIRACY

Beginning at least as early as in or around January 2014, and continuing up to and including at least in or around July 2017, in Orange County, within the Central District of California, and elsewhere, defendants EBRAHIM AZADEGAN ("AZADEGAN") and ALIREZA ALVANDI, also known as ("aka") "AliReza Al" aka "Su Li" ("ALVANDI"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit offenses against the United States, to design, participate in, and execute a scheme to defraud U.S. Company #1 as to material matters, and to obtain property from U.S. Company #1 by means of material false and fraudulent pretenses, representations, and promises, and through the concealment of material facts, using interstate wires, in violation of Title 18, United States Code, Section 1343.

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED AND OVERT ACTS

The Grand Jury incorporates by reference and re-alleges Paragraphs B and C from Count One in this count as though fully alleged herein.

COUNT FIVE

[18 U.S.C. §§ 554, 2(a) and 2(b)]

On or about February 28, 2017, in Orange County, within the Central District of California, and elsewhere, EBRAHIM AZADEGAN ("AZADEGAN") and ALIREZA ALVANDI, also known as ("aka") "AliReza Al" aka "Su Li" ("ALVANDI"), aiding and abetting each other:

(1) attempted to fraudulently and knowingly send and export from the United States merchandise, articles, and objects contrary to a law and regulation of the United States; and

(2) did, and attempted to, knowingly receive, conceal, buy, and sell, and did, and attempted to, knowingly facilitate the transportation, concealment, and sale of merchandise, articles, and objects, knowing the same to be intended for exportation contrary to a law and regulation of the United States.

Specifically, defendants AZADEGAN and ALVANDI did, aided and abetted, and willfully caused others known and unknown to the Grand Jury to purchase, export, transport, and send from the United States computer servers, after causing a false representation that the ultimate country of destination was Slovenia, when in fact defendants AZADEGAN and ALVANDI knew that the computer servers were intended to be sent to Iran.  Defendants AZADEGAN and ALVANDI purchased, attempted to purchase, and attempted to effect the export of the computer servers without applying for and obtaining by such application the necessary license and authorization before attempting to send and export the computer servers from the United States.

COUNTS SIX THROUGH TEN

[18 U.S.C. § 1956(a)(2)(A), 2(a) and (b)]

On or about February 7, 2017 through on or about March 6, 2017, in Orange County, within the Central District of California, and elsewhere, EBRAHIM AZADEGAN ("AZADEGAN") and ALIREZA ALVANDI, also known as ("aka") "AliReza Al" aka "Su Li" ("ALVANDI"), aiding and abetting each other, transported, transmitted, and transferred, a monetary instrument and funds to a bank in the Central District of California from and through a place outside the United States, namely the Hong Kong and the United Arab Emirates ("UAE"), with the intent to promote the carrying on of a specified unlawful activity, to wit: (1) violating the International Emergency Economic Powers Act, Title 50, United States Code, Sections 1701-1706, and the Iranian Transaction and Sanction Regulations, Title 31, Code of Federal Regulations, Sections 560.203 and 560.204; and (2) unlawful smuggling, Title 18, United States Code, Section 554.

Counts Six through Ten were transactions involving funds and monetary instruments. Specifically, the transactions were payments to and by ALVANDI and coconspirator Johnny Paul Tourino and coconspirator Spectra Equipment, Inc. for the purpose of purchasing, smuggling, illegally exporting, and sending to Iran, and related to services provided to Iran, export-controlled items without first obtaining the required licenses to do so.

| COUNT | DATE | AMOUNT | SENDER/RECIPIENT |
|---|---|---|---|
| SIX | 2/07/2017 | $388,954 | Defendant ALVANDI's UAE Front Company to coconspirator Spectra Equipment, Inc. |
| SEVEN | 2/09/2017 | $499,160 | Defendant ALVANDI's UAE Front Company to coconspirator Spectra Equipment, Inc. |

| COUNT | DATE | AMOUNT | SENDER/RECIPIENT |
|---|---|---|---|
| EIGHT | 2/13/2017 | $346,771 | Defendant ALVANDI's UAE Front Company to coconspirator Spectra Equipment, Inc. |
| NINE | 3/01/2017 | $479,930 | Defendant ALVANDI's UAE Front Company to coconspirator Spectra Equipment, Inc. |
| TEN | 3/06/2017 | $519,929 | Defendant ALVANDI's UAE Front Company to coconspirator Spectra Equipment, Inc. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction under Counts One through Five of this Indictment.  Each defendant so convicted shall forfeit the following:

a.   All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense charged in each such Count; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction under Counts Six through Ten of this Indictment. Each defendant so convicted shall forfeit the following:

    a. Any property, real or personal, involved in such offense, and any property traceable to such property; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

Pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the convicted defendant, in committing the offense or offenses giving rise to the

forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve-month period.

                                      A TRUE BILL

                                      /S/
                                      Foreperson

NICOLA T. HANNA
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

ANNAMARTINE SALICK
Assistant United States Attorney
Chief, Terrorism and Export Crimes Section

MARK TAKLA
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section